CHARLES McKINNON, Respondent, v. THE WESTERN COAL & MINING COMPANY, Appellant.

Kansas City Court of Appeals, June 18, and October 1, 1906.

1. MASTER AND SERVANT: Mines and Mining: Demurrer to Evidence: Props: Contributory Negligence. The evidence relating to the injury of a miner in his room is reviewed and held sufficient to send the question of contributory negligence to the jury, since though the miner knows that props are not furnished as requested, yet where the danger was not open and patent and did not appear imminent, he was not compelled to quit work, for mere contributory negligence on his part will not defeat his action where he is injured by the master's willful disregard of the statute.

2. ——: ——: "Required:" Statutory Construction. The word "required" in the statute means requested, and the statute means that the mining company shall keep on hand a sufficient supply of props so that when a miner requests them the company shall send them to him without unnecessary delay to enable him to prop the room. [Conflicting cases considered. Wojtylak v. Coal Company, 188 Mo. 260, followed.]

3. APPELLATE PRACTICE: Conflicting Decisions: Uniformity of Rulings. Uniformity in the rulings of appellate courts is of the highest importance to litigants, and so where it is fairly apparent that when a question again comes before the Supreme

Court it will adhere to certain rulings rather than to other conflicting rulings, the Courts of Appeals should follow the former.

4. **MASTER AND SERVANT: Mines and Mining: Conflicting Instructions.** Where the instructions for the plaintiff are wrong they are not cured by conflicting instructions rightly stating the law, given for the defendant, and the error cannot be said to be harmless.

5. ———: ———: **Inspection: Generating Gas: Instruction.** The owner of a coal mine, which does not generate gas, does not under the statute have to inspect them daily. [Poor v. Watson, 92 Mo. App. 89, distinguished and limited.]

6. ———: ———: **Statutory Construction.** The purpose of the mining statute is to protect persons who work for the mine owner in mining coal without reference to the manner in which they receive their compensation; and the statute therefore applies to a miner whose compensation is so much per bushel.

7. **APPELLATE PRACTICE: Abstract.** An abstract is held to be substantially good.

Appeal from Barton Circuit Court.—*Hon. Henry C. Timmonds*, Judge.

REVERSED AND REMANDED.

*R. T. Railey* for appellant.

(1) If the plaintiff, in an action based upon an ordinance, statute, or the common law, has been guilty of contributory negligence, or if the facts disclose that he assumes the risk, he is not entitled to recover, whether his right be predicated upon either one or the other. Zimmerman v. Railroad, 71 Mo. 488-9; Spiva v. Coal Co., 88 Mo. 73; Hanlon v. Railroad, 104 Mo. 388 to 390; Crumpley v. Railroad, 111 Mo. 157; Lynch v. Railroad, 112 Mo. 437; Prewitt v. Eddy, 115 Mo. 304-5; Weller v. Railroad, 120 Mo. 653; Hayden v. Railroad, 124 Mo. 567; Kelsay v. Railroad, 129 Mo. 362; Lane v. Railroad,

132 Mo. 4; Huggart v. Railroad, 134 Mo. 673; Culbertson v. Railroad, 140 Mo. 61; Peterson v. Railroad, 156 Mo. 552; Davies v. Railroad, 159 Mo. 6; Van Bach v. Railroad, 171 Mo. 338; Holmes v. Brandenbaugh, 172 Mo. 65; Guyer v. Railroad, 174 Mo. 348; Riska v. Railroad, 180 Mo. 191; Mathis v. Stock Yards Co., 185 Mo. 447; Wojtylak v. Coal Co., 87 S. W. 516-17; Blundell v. Mfg. Co., 88 S. W. 105; Schmidt v. Railroad, — Mo. App. —; Green v. Railroad, — Mo. App. —; Watson v. Coal Co., 52 Mo. App. 366-7; Lien v. Railroad, 79 Mo App. 478; Adams v. Coal Co., 85 Mo. App. 495; Gro. Co. v. Railroad, 89 Mo. App. 534; Cogan v. Railroad, 101 Mo. App. 189; Asphalt Co. v. Railroad, 102 Mo. App. 469; Fanning v. Railroad, 103 Mo. App. 157-8; Wands v. Railroad, 106 Mo. App. 99; Ford v. Railroad, 59 N. W. 5; Reeves v. Railroad, 60 N. W. 244; Anderson v. Lumber Co., 69 N. W. 632; O'Malley v. Light Co., 32 N. E. 1119; s. c., 158 Mass. 135; Goodridge v. Mills Co., 35 N. E. 484; s c., 160 Mass. 234; Cassaday v. Railroad, 41 N. E. 129; Knisley v. Pratt, 42 N. E. 986; s. c., 148 N. Y. 372; Railroad v. Reed, 63 N. E. 879-80; Britton v. Cotton Co., L. R. 7 Exch. 130. (2) In the case at bar plaintiff was an independent contractor, and was to receive seventy-two cents per ton for all coal taken out by him, and was to receive $1.12 1-2 per foot for removing the draw slate or "horseback." He was to be paid the same as the other miners throughout the district. Each miner, under his contract of employment, was to look after his own room and keep the roof of same in good condition. Every man was required to put up props, whether they were needed or not. (3) Where a miner is engaged in taking out coal from his room, and where the face of the room is transitory in its nature, and is being constantly changed by said miner by virtue of his contract of employment, the doctrine in regard to defendant being required to furnish a reasonably safe

place in which to work, has no application, but the servant himself assumes all risks of injury, under such circumstances. Aldridge's Admr. v. Furnace Co., 78 Mo. 559; Jackson v. Railroad, 104 Mo. 448; Thomas v. Railroad, 109 Mo. 200; Roberts v. M. & K. T. Co., 166 Mo. 383; Livengood v. Lead & Z. Co., 179 Mo. 239-40; Kleine v. Shoe Co., 91 Mo. App. 102; Dickey v. Dickey, 86 S. W. 911; Gibson v. Freygang, 87 S. W. 3 (Mo. App.); Zeigenmeyer v. Lime & Cement Co., 88 S. W. 139 (Mo. App.); Henson v. A. P. Co., 88 S. W. 166-7 (Mo. App.); Heald v. Wallace et al., 71 S. W. 82 and following (Tenn.); C. C. & M. Co. v. Clay's Admr., 38 N. E. 613 (Ohio); Coal Co. v. Scheller, 42 Ill. App. 619; W. L. Co. v. O'Donnell, 101 Ill. App. 492; Merchant v. Mickelson, 101 Ill. App. 401; Litchfield v. Railroad, 76 N. Y. S. 80; Murphy, Admx., v. Railroad, 88 N. Y. 146; Frazer v. Lumber Co., 45 Minn. 235; Allen v. Railroad, 37 S. W. 171 (Texas); Petaja v. A. I. M. Co., 66 N. W. 951 (Mich.); Carlson v. Railroad, 28 Pac. 497; Armour v. Hahn, 111 U. S. 313; City of M. v. Lundin, 58 Fed. 525; Railroad v. Jackson, 65 Fed. 48; Finalyson v. Mining Co., 67 Fed. 510; s. c., 14 C. C. A. 492. This class of work should not be confounded with that, wherein the miner is dealing with a permanent structure and in which the master is required to look after and keep the same in repair. Scott v. Railroad, 95 N. W. 892; Buey's Admx. v. Chess and Wymond Co., 84 S. W. 563. (4) In short, with full knowledge of all the facts, and with full knowledge of the further fact, that he was recklessly taking his life into his own hands, he proceeded to do that, which the court — as a matter of law — should say no prudent man should be permitted to do, under the same circumstances. He then, assumed all risks of injury — even if it were a permanent structure — and should not be permitted to recover herein. Porter v. Railroad, 71 Mo. 77-8; Aldridge's Admr. v. Furnace Co., 78 Mo. 559; Spiva v. Coal M.

Co., 88 Mo. 73; Jackson v. Railroad, 104 Mo. 448; Thomas v. Railroad, 109 Mo. 200; Roberts v. Tel. Co., 166 Mo. 370; Livengood v. L. & Z. Co., 179 Mo. 239-40; Mathis v. Stock Yds. Co., 185 Mo. 434; Wojtylak v. Coal Co., 87 S. W. 506 (Mo.); Watson v. Coal Co., 52 Mo. App. 366; Adams v. Coal Co., 85 Mo. App. 495; Lee v. K. C. Gas. Co., 91 Mo. App. 616; Kleine v. Shoe Co., 91 Mo. App. 102; Anderson v. F. N. B. Co., 103 Mo. App. 386; Gibson v. Freygang, 87 S. W. 3; Zeigenmeyer v. Lime & Cement Co., 88 S. W. 139; Henson v. A. P. Co., 88 S. W. 166. (5) The foregoing evidence being undisputed, must be taken as true. It was therefore plaintiff's duty to look after his own room and to prop the roof of same, and not defendant's duty to do so. Farber v. Railroad, 139 Mo. 285; May v. Crawford, 150 Mo. 527; Davies v. Railroad, 159 Mo. 7; Hendley v. Railroad, 106 Mo. App. 27; Stanley v. Railroad, 87 S. W. 114; Felton v. Anderson, 66 S. W. 182; Railroad v. King, 51 S. W. 319; Scott v. Railroad, 95 N. W. 892; Buey's Admx. v. Chess & Wymond Co., 84 S. W. 563; Livengood v. Lead & Z. Co., 179 Mo. 239; (6) The plaintiff having sworn, that neither the gas nor dampness of the mine had anything to do with the falling of the slate, which injured him, this admission is to be taken as true, for the purposes of this case. Schafstette v. Railroad, 175 Mo. 155; Feary v. Railroad, 162 Mo. 105; Davies v. Railroad, 159 Mo. 6; Pratt v. Conway, 148 Mo. 298; Payne v. Railroad, 30 S. W. 150; State v. Turner, 110 Mo. 198; State v. Turlington, 102 Mo. 663; State v. Brooks, 99 Mo. 142; Bogie v. Nolan, 96 Mo. 91; State v. Peak, 85 Mo. 192; Shirts v. Overjohn, 60 Mo. 305; Hamilton v. Railroad, 89 S. W. 895; Cogan v. Railroad, 101 Mo. App. 188; Holmes v. Leadbetter, 95 Mo. App. 425; Erwin v. Railroad, 94 Mo. App. 297. (7) If this be considered as an action under the coal mining law, then it was the duty of plain-

tiff to allege in his petition, that demand had been made for props, and that defendant ignored said demand and negligently failed to furnish same, as requested. Barron v. Mo. L. & Z. Co., 172 Mo. 233; McIntosh v. Railroad, 103 Mo. 133; Barker v. Railroad, 91 Mo. 90; Case v. Zinc & L. Co., 103 Mo. App. 479; Cutshall v. McGowan, 98 Mo. App. 705; Dulaney v. Railroad, 21 Mo. App. 597; Leslie v. Coal Co., 110 Mo. 41. (8) The plaintiff therefore, must recover, if at all, upon the charge that a legal duty was imposed upon us to furnish props, without any demand having been made to furnish same. Waldhier v. Railroad, 71 Mo. 518; Hite v. Railroad, 130 Mo. 136; McManamee v. Railroad, 135 Mo. 447; Huston v. Tyler, 140 Mo. 263; McCarty v. Hotel Co., 144 Mo. 402; Chitty v. Railroad, 148 Mo. 74; Bartley v. Railroad, 148 Mo. 139; Cole v. Armour, 154 Mo. 350; Feary v. Railroad, 162 Mo. 96; Hesselbach v. St. Louis, 179 Mo. 524; Bagnell T. Co. v. Railroad, 180 Mo. 463; Yall v. Gillham, 187 Mo. 408; Pryor v. Railroad, 85 Mo. App. 368. (9) On the undisputed facts, the plaintiff was not only guilty of negligence directly contributing to his own injury, but said negligence, was the direct and proximate cause of his own injury. Wojtylak v. Coal Co., 87 S. W. 517; Blundell v. Mfg. Co., 189 Mo. 559; Mathis v. Stock Yds. Co., 185 Mo. 447; Livengood v. L. & Z. Co., 179 Mo. 241; Ries v. Railroad, 179 Mo. 7; Moore v. Railroad, 176 Mo. 542; Zumalt v. Railroad, 175 Mo. 311; Roberts v. Tel. Co., 166 Mo. 384; Davies v. Railroad, 159 Mo. 7; Culbertson v. Railroad, 140 Mo. 64; Spillane v. Railroad, 135 Mo. 426; Watson v. Railroad, 133 Mo. 246; Hudson v. Railroad, 123 Mo. 449; Weber v. Railroad, 100 Mo. 204; Powell v. Railroad, 76 Mo. 82; Dickey v. Dickey, 86 S. W. 911; Cogan v. Railroad, 101 Mo. App. 189; Gro. Co. v. Railroad, 89 Mo. App. 534; Adams v. Coal Co., 85 Mo. App. 495; Heald v. Wallace, 71 S. W. 86.

*Cole, Burnett & Moore* for respondent.

(1)   We submit that this judgment should be affirmed, or the appeal dismissed, for appellant's failure to comply with the rules and print an abstract of the entire record.   Jordan v. Railroad, 92 Mo. App. 81; Lawson v. Mills, 150 Mo. 429; State ex rel. v. Smith, 172 Mo. 454; Butler County v. Graddy, 152 Mo. 443; Bick v. Williams, 181 Mo. 528; Sedgwick Co. v. Newton Co., 144 Mo. 301; State v. Hockaday, 98 Mo. 593; 1 Bouv. Law Dict., "File;" 13 Am. and Eng. Law (2 Ed.), 13 et seq.; 8 Ency. of Pleading and Prac., 923; 19 Cyc., p. 528; Dawson v. Cross, 88 Mo. App. 299; Rogerson v. Neal, 16 Pick. 370; French v. Neal, 24 Pick. 55.   (2) Whether the danger was too glaring was for the jury. Adams v. Coal Co., 85 Mo. App. 486; Smith v. Coal Co., 75 Mo. App. 181; Weston v. Mining Co., 105 Mo. App. 708; Hamilton v. Mining Co., 108 Mo. 375; Thompson v. Railroad, 86 Mo. App. 149; Cardwell v. Railroad, 90 Mo. App. 34; Adams v. Machine Co., 110 Mo. App. 375; Adams v. Machine Co., 95 Mo. App. 119; Edwards v. Barber Co., 92 Mo. App. 227; Hamman v. Coal Co., 156 Mo. 232; Stafford v. Adams, 88 S. W. 1132; Nash v. Dowling, 93 Mo. App. 163; Haworth v. Railroad, 94 Mo. App. 221; Holmes v. Brandenbaugh, 172 Mo. 65.   (3) Counsel say that where the face of the room is transitory, and is changing with the work, the servant assumes all risks.   The foregoing mining cases proceed upon a different theory, and they are still the law. Counsel overlook the obvious fact that the "changing structure" doctrine, if there is such a doctrine, is perfectly consistent with the statute requiring the defendant to send down props when required.   The very fact that the work is changing is doubtless one of the primary reasons of the statute requiring props to be furnished.   That is the method the law provides for securing a reasonably safe place to work.   (4)   Even if it

were McKinnon's duty to do his own propping, the statute made it the duty of the defendant to send down the props to do it with; and the jury had the right to believe him and his boy when they swore that the props were not there adequate for that purpose, and to believe Slack when he said McKinnon had demanded props, and to believe Bowker when he said he often had trouble getting props down after ordering them. (5) Appellant complains because the petition charges a failure to inspect the mine daily, and that the evidence shows the charge to be true. It has a place in this case, and tends to show defendant's negligence and corroborate McKinnon. Section 8802 very plainly requires such daily examination in all mines generating gas, and this court has expressly held that coal mines come within that class. Poor v. Watson, 92 Mo. App. 89. One effect of the statute is the erection of a legislative standard of duty or care, in addition to that imposed previously by the common law." Andricus' Admr. v. Coal Co., 90 S. W. (Ky.) 236; Fisher v. Central Lead Co., 156 Mo. 479. (6) The Wojtylak case is not decisive of this by any means, for various reasons. In two cases based upon this statute this court has held that the word "required" did not mean "requested;" that such a construction would be "absurd." And in the Bruce case this court emphasized the very obvious distinction between these simple words. Bowerman v. Mining Co., 98 Mo. App. 316; Weston v. Mining Co., 105 Mo. App. 702; Bruce v. Wolfe, 102 Mo. App. 385. We respectfully insist that when the Supreme Court said the Bowerman case was "not in point," because based upon the statute, it discharged its duty, and that its subsequent remarks were *obiter dicta,* pure and simple. Such *dicta* are not binding on other courts and judges. Rapalje & Lawrence Law Dict., Dicta; Bouvier Law Dict., Dicta; 3 Cyc., 494, and cases cited; 11 Cyc., 755; 14 Cyc., 286 et seq.; Burton v. Perry, 146 Ill. 71, 34

N. E. 60; Van Renselaer v. Wright, 12 N. Y. Supp. 330; Bratsch v. People, 195 Ill. 165, 62 N. E. 895; Rohrbach v. Ins. Co., 62 N. Y. 47, 20 Am. Rep. 451; Cohens v. Virginia, 6 Wheat. (U. S.) 399; Hamilton v. Ins. Co., 35 Mo. App. 263; State ex rel. v. Smith, 129 Mo. 589. And again "*dicta* in opinions, to be properly understood, must be read in the light of the facts adjudged, to which they are intended to apply." State ex rel. v. Smith, 172 Mo. 460. (7) But we insist that in the case at bar defendant's rights were secured, even under the *dicta* in the Wojtylak case. Instruction No. 1 does not purport to cover the whole case, and any defect in it in this respect was supplied in instruction No. 3, given at the instance of defendant, wherein the jury was told, "it was the duty of defendant, upon demand being made by plaintiff for props, to furnish the same within a reasonable time after such demand." This court has said: "Defendant's instruction is explanatory, rather than contradictory, of the former. Omissions in a plaintiff's instruction may be supplied by those given for the defendant." Squires v. Kansas City, 100 Mo. App. 632; Buckman v. Railroad, 100 Mo. App. 34; Lackland v. Mining Co., 110 Mo. App. 639; Baker v. City, 106 Mo. App. 511; Kennedy v. Transit Co., 103 Mo. App. 1; Lewis v. Humphries, 64 Mo. App. 473; Kenney v. City, 35 Mo. App. 108; State v. Meals, 184 Mo. 256; State v. Kinder, 184 Mo. 295; Burton v. Ins. Co., 96 Mo. App. 204; Norton v. Kramer, 180 Mo. 544; Geismann v. Electric Co., 173 Mo. 679; Chambers v. Chester, 172 Mo. 490; Anderson v. Railroad, 161 Mo. 427; Grace v. Railroad, 156 Mo. 303; Schroeder v. Michael, 98 Mo. 48; Bank v. Ragsdale, 171 Mo. 186; Montgomery v. Railroad, 181 Mo. 498; Brown v. Transit Co., 108 Mo. App. 315; Fillingham v. Transit Co., 102 Mo. App. 585; Minter v. Bradstreet Co., 174 Mo. 493. (8) The word "required" is a plain English word, and does not need to be defined. The courts have held that

it is not necessary to define such ordinary terms as a morbid and insane delusion, carelessly, diligent inquiry, reasonable care and diligence, remotely, prudence, care, ratification, accrued, substantial, deceptively, fraudulent, frauds, clear, presumption, preponderance in good faith, substantially performed. Goldsmith v. Wamsganz, 86 Mo. App. 8; Glover v. Am. H. F. Co., 76 Mo. App. 106; Feary v. O'Neill, 149 Mo. 467; Christian v. Ins. Co., 143 Mo. 460; Sweeney v. Railroad, 150 Mo. 401; Midland El. Co. v. Cleary, 77 Mo. App. 298; Kischman v. Scott, 166 Mo. 228; Henry v. Buddecke, 81 Mo. App. 366; Crapson v. Wallace, 81 Mo. App. 684. Surely the word "required" is no more difficult of comprehension than many of the words above given, and if it were, defendant should have asked a more correct definition, in a proper way. Ashby v. Gravel Road Co., 111 Mo. App. 84. (9) It is true that in instruction No. 1 the court followed quite closely some of the language of this court in the Bowerman case. And this being true, we respectfully insist that if by any legitimate rule of practice its judgment can be upheld it ought to be done, as a matter of simple justice, notwithstanding the Wojtylak *dicta*. This court ought to stand by the trial court in every effort to keep the decisions uniform. (10) Cousel seem to think that under the Wojtylak *dictum* our petition is defective in not averring a request for props. Surely not. It follows the statute, alleging that defendant "negligently failed to send down into said mine such props as were required." It alleges a constitutive fact, viz., that props were required, and to allege also that they were requested would be redundant if required means requested; at least it would simply be pleading evidence, and that is unnecessary and improper. Nichols v. Nichols, 134 Mo. 187-194. Besides the case was tried, on defendant's theory that props must be demanded. At all events, the petition is good after verdict. Slaugh-

ter v. Slaughter, 106 Mo. App. 104; Bank v. Assurance Co., 106 Mo. App. 124.

BROADDUS, P. J.—The defendant is a corporation engaged in mining coal in Barton county, Missouri. The petition states that on December 21, 1903, he was working as a laborer for defendant in its coal mine in said county, and while so engaged, without fault on his part, was crushed by a quantity of slate, stone and earth falling upon him from the roof of the mine, where he was laboring, whereby he was bruised, injured, his back hurt, and several ribs broken." etc. That said injury was the result of defendant's negligence, in carelessly and negligently permitting the roof of said mine to become and remain in a dangerous and unsafe condition, so that slate, rock and earth in said roof had become loose, unsupported and liable to fall; that the condition of the roof required same to be supported by props, and defendant wrongfully and carelessly and negligently failed to support and prop said roof; that defendant negligently failed to keep a sufficient supply of timbers to prop the roof of said mine as required, so that plaintiff and other laborers therein might at all times be able to properly prevent said workings from caving in; that defendant negligently failed to send down into said mine such props as were required; and that said mine, in which men were employed, generated gas, and defendant negligently and carelessly failed to have the same examined every morning by a practical and duly authorized agent to determine whether there were dangerous accumulations of gas, or lack of proper ventilation, or obstructions to roadways, or any other dangerous conditions in said mine. That plaintiff by reason of defendant's negligence aforesaid was injured as described; that defendant knew the dangerous and unsafe condition of said mine when plaintiff was injured, or by the exercise of ordinary care could have known it; that notwithstanding the facts stated,

defendant ordered and caused plaintiff to work in and at such unsafe and dangerous place, and under said unsafe and dangerous roof," etc.

The answer consisted of a general denial and that plaintiff was an experienced miner, was fully acquainted with his room, its surroundings and the danger to be apprehended in working therein; that it was plaintiff's duty to put up his own props, to look after and test the roof of his room to ascertain whether it was safe or otherwise, and to put up said props when they were needed; that at the time of the accident, and for some time prior thereto, ample props had been delivered to plaintiff, which were more than sufficient to have enabled him, in the exercise of ordinary care, to prop his roof and make the same safe against all danger; and that it was no part of the duty of defendant to examine said roof nor to prop the same. That plaintiff had both actual and constructive notice, prior to his injury, and in ample time to have protected himself against the same, that the slate or rock which fell upon him was unsafe and liable to fall at any moment. That plaintiff, with both actual and constructive notice of the dangerous condition of said roof, and the danger to which he was subjecting himself in working without propping same, recklessly and negligently took his life in his own hands by continuing to work in said room after sufficient props had been furnished him without putting up any of said props, and by reason of his own reckless, willful and wanton conduct he brought about his own injury, without any fault or negligence upon the part of defendant; and that the dangers arising from said work, plaintiff was doing, were patent, open to observation, and were assumed by him, by reason of the facts aforesaid.

The reply put in issue the facts set up in the answer. Plaintiff recovered judgment, from which defendant appealed.

The mine in this instance was operated in the following manner: First a shaft was sunk from the surface of the earth to a distance of about forty-six feet. What are called mine entries were run out in different directions from the shaft, which were about six feet wide and five feet high. Before a miner begins to work, a neck is cut from one of these entries about five or six feet in length, at the end of which the miner begins to dig coal. This latter place is called the miner's room and is of various widths of from twenty to twenty-five feet. It was in one of these rooms the plaintiff was at work when he was injured. The mine in question was operated as similar mines were, with a cage from the surface to the bottom of the shaft and there were tracks for transporting coal to the shaft and material from the shaft to the different parts of the interior of the mine. The cars that carried the material back and forth were operated by mules in charge of a driver. At the time of plaintiff's injury his room had been mined until it was about sixteen by twenty-five feet. It was shown that it was the duty of the miners to look after the condition of their rooms and to do the propping themselves. It was also shown that defendant had a sufficient quantity of props at the mine for the use of the miners. On quitting work the day previous to his injury, plaintiff had drilled a hole in the coal of his room and filled it with explosives, which in the usual course of business was shot, as the miners call it, after he left the mine. The purpose of the shot is to loosen the coal for the convenience of the miner.

Plaintiff in his testimony stated that he had been working in the mine in question for about eight months previous to his injury; that the roof of his room in height was from two to three feet; that sometimes mixed with the coal is another material, which mixture the miners call "horseback;" that both the floor and roof of the mine were composed of slate, which on one side of the

room was safe and sound, but on the other side the slate was what he called "draw slate," that is, slate that cuts itself, which was unsafe and needed props; that on the morning in question there were no props in his room, nor any in the entry room; that it was a rule when a miner wanted props he ordered them through the driver, who delivered the message to the operator of the cage at the mouth of the shaft, who calls to the surface through a speaking tube for them, giving dimensions, which are furnished usually in a short time; that for several days prior he called for props, but did not get them and that on the morning in question, or a day or two previous, he is not certain which, he called upon the boss for props of a certain length and was informed by him that there were no such props on hand; that there was one prop in the room but it was too crooked to be used.

At the time the roof fell upon him plaintiff was in a sitting position using the pick with his right hand, the usual maner of mining coal in that kind of a place. There was an abundance of evidence that there was a sufficient number of props in the room at the time in question; and evidence that plaintiff made no request for props as stated by him. He was not employed at regular wages, but was paid by the amount of coal he mined. It stands admitted that the mine in question did not generate gas; and it was also shown that it was one of the rules of the company that miners were to put in props whether they were needed or not.

At the close of plaintiff's case and also at the close of all the evidence, defendant requested the court to instruct the jury that plaintiff was not entitled to recover and to return a verdict accordingly, which the court refused. There is no dispute but what the falling of the slate and rock upon the plaintiff was the result of the negligence of some one in failing to support the roof by means of props. The plaintiff in giving his reason for

120 App.—11

working under the roof without props stated that, although he would have used props if they had been furnished him, yet he thought it safe otherwise or he would not have gone into the room; that to him it seemed safe and sound and did not need props.

The contention of defendant is, that as it was the duty of plaintiff to look after the safety of his own room, that he is not entitled to recover, as he was aware of the danger. In other words, that he was guilty of such contributory negligence as forfeited his right in that respect. But we are of the opinion that such is not the law. In Adams v. Kansas & Texas Coal Co., 85 Mo. App. 486, the court held, in an opinion by ELLISON, Judge: "That, notwithstanding the plaintiff knew defendant had not furnished the props as requested, yet as the danger from lack of them was not open and patent and did not appear imminent, he was not forced to quit work, or else to accept harmful results without complaint. Such is the rule in this State as shown by a long line of decisions in the Supreme Court and the Courts of Appeals." And that decision was expressly approved by the Supreme Court in Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260. And such is the holding in Western Coal Co. v. Beaver, 192 Ill. 335, which also met the approval of the Supreme Court in Wojtylak case, supra. The plaintiff's testimony, as stated, was to the effect that he thought the roof safe, although as a precaution he would have propped it if props had been furnished. It was, therefore, a question for the jury, whether he was justified under the circumstances in working at the time stated, and not a question of law for the court. The Illinois case is to the same extent as what is said in Adams v. Kansas & Texas Coal Co., supra. In the former, it is said that the "mere contributory negligence on the part of the miner will not defeat a right of recovery where he is injured by the willful disregard of the statute, either by an act of omission or

commission on the part of the owner, or operator, or manager."

It is insisted that the court committed error in giving instruction numbered one for the plaintiff. It reads in part as follows: "You are instructed that it is the duty of a mine operator to keep on hand a sufficient supply of timber for props, to be used when required by the workmen in the mines to keep the workings from caving in; and when a mine is being worked under the supervision and direction of a ground foreman or pit boss, and if props are required in the mine, he is presumed to know it, and his knowledge is that of the company; and when such props are so needed or required, it is the duty of the company to send them down to the workman." The theory of the instruction is, that it is not the duty of the workman to request props, but that of the foreman to know when they are needed and send them down into the mine. This court in Bowerman v. Mining Co., 98 Mo. App. 308; Weston v. Mining Co., 105 Mo. App. 702, and Bruce v. Wolfe, 102 Mo. App. 385, held that the word "required" did not mean "requested," but meant "when needed," and the miner did not have to request or demand that props be sent down, but the mineowner was charged with the duty of knowing when they were needed and to send them down without being requested so to do. But in the Wojtylak case, supra, the Supreme Court disapproved of that construction and approved of the holding in Adams v. Kansas & Texas Coal Co., supra, where the word "required" was construed to mean "requested," and also approved of the holding in the Illinois case, where it is also held that the word "required" means "requested." The court then proceeds in the following language: "We think section 8822, Revised Statutes 1899, means that the mining company shall keep on hand a sufficient supply of props so that when a miner requests them, it shall send them to

him without unnecessary delay, to enable him to prop his room."

Respondent insists that, as the opinion is *obiter dictum,* this court should disregard it and adhere to the holding in the Bowerman and other cases cited. But, as our decisions have been conflicting on the question, it is proper that we should say which is to govern. In so doing, due deference should be had for the opinion of the Supreme Court, which so pointedly calls attention to the conflict in the cases named. We take it for granted that that court, when the question again comes before it, will adhere to the decision in the Wojtylak case. Uniformity in rulings of the appellate courts is of the highest importance to litigants.

Respondent, however, contends that, notwithstanding the instruction may have been erroneous, the error was cured by one given at the instance of defendant. It is true that defendant's instruction numbered three is to the effect, that the duty devolves on the workman to request props when needed, yet we cannot see that it had the effect of curing the defect in that of the plaintiff. They are absolutely in conflict with one another, and altogether irreconcilable. It is no such an error that we can say was harmless on the ground that the verdict was for the right party, as the evidence greatly preponderated in favor of defendant.

The further question is raised by the defendant, that, as plaintiff worked not for wages but that his compensation was to be a fixed price per bushel for the coal he mined, he was not such a workman for whose safety the statute was enacted. But we do not think the position is tenable. The purpose of the statute was to protect persons who worked for the owners of the mines in mining coal, without reference to the manner in which they might receive compensation for their work.

Respondent raises the point that the appeal should be dismissed because the defendant has failed to show certain matters in its abstract as are required by the statute and the rules of the court, but we find it is substantially good.

Other questions raised in the case are not well taken. For the errors noted the cause is reversed and remanded. All concur.