O'BRIEN, *Appellant*, v. WESTERN STEEL COMPANY.

1.    **Negligence**: VARIANCE.  A petition charging death from a negligent defect in the plan of the construction of an elevator, on which deceased was riding when injured, is not supported by proof of death resulting from negligence in its operation.

2.    ———: RIDING ON ELEVATOR.  An employe of defendant familiar with the construction of its elevator used in its business only for transporting material, and who rides thereon under an implied license for his own pleasure and convenience, can only require of defendant the exercise of ordinary care in its operation.

3.    ———: ———.  The employe in such case accepts whatever risk is incident to the construction and operation of the elevator.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*T. B. Childress* for appellant.

(1)  The trial court erred in instructing the jury that "under the evidence the plaintiff was not entitled to recover."    Upon the theory upon which the suit was brought and tried, the appellant was clearly entitled to recover.  *Corby v. Hill*, 4 C. B. (N. S.) Rep. top p. 554,

side pp. 556–563; *Sweeny v. Railroad*, 10 Allen [ Mass.] 374; *Corcoran v. Holbrook*, 59 N.Y. 518; *Ryan v. Fowler*, 24 N. Y. 410; *Moore v. Railroad*, 84 Mo. 481; *Caughtry v. Woolen Co.*, 56 N.Y. 124; *Birge v. Gardiner*, 15 Cowan, 306; Wood on Master and Servant [2 Ed.] sec. 334. (2) That there was no evidence imputing or tending to impute negligence or imprudence to William O'Brien; and (3) if there had been—being a question of fact—it belonged exclusively to the jury, under proper intructions from the court — and the court usurped the province of the jury in its instructions to them. *Nagel v. Railroad*, 75 Mo. 665; *Norton v. Ittner*, 56 Mo. 352; *Mauerman v. Siemerts*, 71 Mo. 104–105; *Thorpe v. Railroad*, 89 Mo. 650; Wharton on Negligence, sec. 425; *Tabler v. Railroad*, 93 Mo. 86. (4) Before William O'Brien can be charged with negligence in going upon the elevator, not only must the defective construction of the elevator have been known to him, but he must also have been aware of the danger therefrom. Wood on Master and Servant [2 Ed.] p. 763, sec. 376. (5) Whether William O'Brien knew, or ought to have known, of the defects in the construction of the elevator and the danger therefrom, were questions of fact to be submitted to the jury. Wood's Master and Servant [ 2 Ed.] p. 764, sec. 577. (6) The boy William O'Brien was not bound to examine into the safe and proper construction of the elevator. The use of the elevator was not incident to his employment, nor connected therewith, and he could not be expected to know how it was constructed and whether it was or was not safely constructed. It was the duty of the respondent to see that it was safely and properly constructed for the purposes for which it permitted it to be used; and not the duty of the boy to guard by any particular vigilance against accidents arising from the defective construction thereof. *Ryan v. Fowler*, 24 N. Y. 416. He was held only to ordinary care and

prudence. (7) The trial court erred in rejecting expert testimony offered by appellant to show that the defects in the construction of the elevator could readily have been obviated or remedied. (8) The demurrer to the evidence admitted the facts the evidence tended to prove, and, in passing upon it, the court was required to make every inference of fact in favor of the appellant, which a jury might with any degree of propriety have inferred in her favor, and that, when viewed in this light, if the evidence was not sufficient to sustain the demurrer, the instruction should have been refused. *Donohue v. Railroad*, 91 Mo. 360.

*Cunningham & Eliot* for respondent.

The circuit court was right in taking the case from the jury, because: (1) The petition does not state facts sufficient to constitute a cause of action, in that (*a*) it does not show any duty in defendant to provide an elevator. *Tabler v. Railroad*, 93 Mo. 84-5. (*b*) It does not show that defendant was responsible for the character, construction or arrangement of the elevator in question. (*c*) It does not show that plaintiff's son was on the elevator at the request or invitation of defendant, or was engaged in the performance of his duty to defendant at the time of the accident. *Straub v. Soderer*, 53 Mo 38; *Overholt v. Vieths*, 93 Mo. 422; *Moore v. Railroad*, 84 Mo. 487-8; *Andrews v. Lynch*, 27 Mo. 167; *Syme v. Steamboat*, 28 Mo. 335; *Burdsal v. Davies*, 58 Mo. 138; *Butler v. Lawson*, 72 Mo. 227; *Hart v. Harrison Wire Co.*, 91 Mo. 414. (2) There was no evidence tending to prove that the death of plaintiff's son was occasioned by the proximate cause alleged in the petition. *Buffington v. Railroad*, 64 Mo. 246; *Harlan v. Railroad*, 65 Mo. 22; *Current v. Railroad*, 86 Mo. 62; *Waldhier v. Railroad*, 71 Mo. 514; *Gurley v. Railroad*, 93 Mo. 445; *Ely v. Railroad*,

77 Mo. 34; *Boland v. Railroad*, 36 Mo. 484; *Callahan v. Warne*, 40 Mo. 131; *Lord v. Railroad*, 82 Mo. 139; *Powell v. Railroad*, 76 Mo. 80; Wharton's Law of Negligence, secs. 134–143; Shearman and Redf. on Neg., chap. 2; Cooley on Torts, p. 69. (3) The evidence showed clearly, and beyond a reasonable doubt, that the death of plaintiff's son was caused by his own negligence. *Powell v. Railroad*, 76 Mo. 80, and authorities cited on p. 83; *Lenix v. Railroad*, 76 Mo. 86; *Maloy v. Railroad*, 84 Mo. 271; *Taylor v. Railroad*, 86 Mo. 457; *Devitt v. Railroad*, 50 Mo. 302; *Rains v. Railroad*, 71 Mo. 164; *Dowling v. Allen*, 88 Mo. 293.

BRACE, J.—This is an action to recover damages by a mother for the death of her minor son, William O'Brien, an employe of the defendant, who was killed in an elevator on defendant's premises. At the close of plaintiff's testimony the court gave an instruction that the plaintiff could not recover. She thereupon took a non-suit with leave; her motion to set aside the non-suit having been overruled and judgment rendered for the defendant, she appeals.

Plaintiff's cause of action is made to appear by the following averments contained in her amended petition: "That on the fifth day of August, 1886, about eleven o'clock in the night time, the said William O'Brien, being in the employ of the defendant, as aforesaid, and being on said elevator descending from the fourth or top floor of said building to the first floor thereof, and the said elevator having descended nearly to the first or ground floor of said building, and having stopped for an instant, and the said William O'Brien having stepped to the front of said elevator to a position from which he could step therefrom to the ground or first floor so soon as said elevator should reach said first floor, and the person managing, operating and running said elevator, not being able to see said William O'Brien

on said elevator from where he was compelled to stand in order to manage and operate said elevator, owing to the negligent and improper construction thereof, and not knowing that said William O'Brien was standing on said elevator, near the front thereof, ready to step therefrom when it reached the first floor of said building, suddenly reversed said elevator and started it upwards, and that said William O'Brien was then and there and thereby caught between the platform or floor of said elevator and the arch of the opening or entrance to said elevator, and was then and there so crushed and injured between the platform or floor of said elevator and the said arch that he died almost instantly therefrom. That the death of said William O'Brien was caused by the fault and negligence of the defendant in not having said elevator so constructed and arranged that the person employed to manage, operate and run said elevator, whilst managing, operating and running the same, could see onto the said elevator from the point where he had to stand when operating, managing and running the same, and could see and know when any person was on said elevator when it reached the first or ground floor of said building and was near to the front of said elevator floor; all of which said defendant might and would have had by the use of reasonable and ordinary care and diligence."

It does not appear from the pleadings or evidence when or by whom the elevator in question was constructed or to whom it belonged; it only appears that at the time of the accident and for some time prior thereto the defendant was in possession of the premises, operating the elevator, for the purposes of its business in transporting material (coke, coal, ore, iron, etc.) to and from the several floors of the building in which it was situate and that for the purposes of this business it was not necessary that any person should be transported on it. That there were stairways in the building for the use of those who desired to go up or down

O'Brien v. Western Steel Co.

from one floor to another, but that for some months previous to the employment of the plaintiff's son, and during the time of his employment, the elevator was frequently and continuously used by the defendant's employes in going from one floor to another, The elevator was a double one, having two cages, one going up as the other came down.

The cages were open platforms and moved in a well or shaft enclosed by brick walls having arched openings on each floor, was operated by steam, and managed by the operator from the engine room adjoining the shaft on the ground floor, by means of a crank. From his position at the crank, through a window in the wall, he could see only a part of the platform of the cage on which the accident happened as it passed between the first and second floors; owing to obstructing machinery in the engine room he could not see that part between the center of the platform and the front toward the arched opening of the first floor. About five weeks before the accident William O'Brien, plaintiff's son, became an employe of defendant; his duties were in connection with another employe to unload "rail butts" from trucks brought to his post and which were thereafter on "buggies or barrows" wheeled to the hoist by other employes and carried thereupon to their appropriate floor; with these butts before they reached, or after they were reloaded on the buggies he had nothing to do; his post was outside the building, and his duties did not require him to enter the same or go upon the elevator. Before the accident he had frequently visited the engine room, and had ridden upon the elevator.

At the time of the accident the workmen on the several floors were by an arrangement of their own furnished with ice to go into their water, at their own expense. The deceased and his comrade had made an arrangement for their ice water with the workmen on the fourth floor. On the night of the accident the

deceased and his comrade had separately gone to the fourth floor for a drink of water, as they had done for about a week before the accident. After getting their drink they remained on the fourth floor about ten minutes, then entered the cage, gave the signal for lowering, and as they descended the deceased stepped to the side and near the edge of the platform, next to the opening on the first floor, his comrade just behind him. When they had passed the arch of the opening on the first floor the deceased leaned forward projecting his head about three inches into the archway preparing to step off when the cage should reach the ground floor. When the platform of the cage reached within about eighteen inches of the ground, however, its motion was suddenly reversed, the cage went up, catching the deceased's head between the platform and the arch, crushing it down on the platform and inflicting injuries from which he directly died. The operator of the elevator from his position at the crank in the engine room could not see the space on the platform of the cage occupied by the deceased and his companion at the time he reversed the motion; he says he did not know that any body was on it, and reversed it because the other cage was wanted below. If the platform had descended to the level of the ground floor as was the custom for it always to do before that time, that the deceased would have gotten off safely, there can be no question.

He was on the elevator not as an employe of the defendant discharging duties within the scope of his employment, but at best under an implied license for his own pleasure and convenience ; he was familiar with its construction and operation, and when he went upon it accepted whatever risk there was, incident to such construction and operation. It did not become the duty of the defendant to change either the one or the other by reason of the fact that the deceased and other

employes of the defendant, for their own convenience, were impliedly permitted to ride upon it, such implication arising simply from the fact that they so used it without remonstrance. The only duty that such use could impose upon the defendant would be to operate its elevator in its business with ordinary care in view of such use ; a failure to so operate it would be an act of negligence and a breach of duty for the consequences of which the defendant may be held liable. The petition, however, states no cause of action against the defendant for any act of negligence in operating the elevator, so that branch of the subject need not be further considered, so far as the rights and the duties of the parties in this action are concerned.

The act of negligence charged is in the plan upon which the elevator was constructed, and the important preliminary inquiry, what was the proximate cause of the death of the plaintiff's son, may obviate the necessity of any extended discussion of that plan, or its supposed connection with the injury. Obviously two concurrent acts produced that death, the act of the deceased in placing himself in an attitude to step off the elevator, and the act of the operator in suddenly reversing its motion. Conceding that the evidence does not warrant an inference that the deceased was guilty of negligence in placing himself in the position he did at the time and under the circumstances, then, if his death was the result of any negligent act, it was that of the operator in reversing the motion of the elevator. And that negligent act was the proximate cause of his death. This act being the immediate cause of the injury complained of, if it was contributed to in any manner by the supposed defect in the plan of construction, that defect at best could only be a remote cause, and would not support plaintiff's action. There was in fact, however, no defect shown in the plan, or the construction of the elevator to contribute to the death of plaintiff's

son ; it was safe and sufficient not only for all the purposes of defendant's business, but for all the uses to which it was put by the defendant's employes if operated with ordinary care. The negligence, if any, that caused the death of the deceased was in the operation of the machine, and not in its plan or construction.

The allegations of the petition were wholly unsupported by the evidence both as to the alleged act of negligence, and as to the proximate cause of the death of William O'Brien, and at the close of plaintiff's case the court could not do otherwise than instruct that she could not recover, and there was no error in its refusal to set aside the non-suit taken by reason of such instruction. All concur, except BARCLAY, J., not sitting.