MARY A. BOWERMAN, Respondent, v. LACKAWANNA MINING COMPANY, Appellant.

Kansas City Court of Appeals, February 2, 1903.

1. **Construction: STATUTES: RULES.** Rules of interpretation are intended to aid in ascertaining the legislative intent rather than to control the intent and confine the operation of the statute, and where the intention is clear all rules should be rejected.

2. **Mines and Mining: STATUTES: DEATH: DEPENDENT: ACTION.** Under section 8820, Revised Statutes 1899, a mother who is dependent upon a son for support may maintain an action for his death caused by a violation of the mining act.

3. ———: PROPS: REQUIRED: CONSTRUCTION. In section 8822, Revised Statutes 1899, the words "when required" mean "when needed" and the miner does not have to request or demand that props be sent down, but the mineowner is charged with that duty.

4. ———: DAMAGES: EVIDENCE: BENEFITS. The evidence relating to the contribution of a son to the support of his mother is reviewed and it is held that she was entitled to recover more than nominal damages, notwithstanding the rule that in such actions the parents should show with a reasonable degree of accuracy the amount and character of the benefits received.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) Plaintiff's petition does not state any cause of action, in that it does not show any right in plaintiff to maintain this action or that defendant has failed to comply with the provisions of the statute, this action being founded upon sections 8820 and 8822, Revised Statutes 1899. (2) The statute must be strictly construed. McNamara v. Stevens, 76 Mo. 329; Gibbs v. Hannibal, 82 Mo. 143; Burkes v. Railroad, 91 Mo. 86; Kelley v. St. Louis, 152 Mo. 596; Brown v. Railway, 70 Am. St. Rep. 666. (3) Plaintiff is not entitled to maintain this action not being one of the persons provided for in the statute. The rule of *ejusdem generis* is in full force in this State. Black, Interpretation of Statutes, page 141; Brooks v. Cook, 44 Mich. 617; State v. Schuchman, 133 Mo. 111; Brannell v. Adams, 146 Mo. 70; Joplin v. Leckie, 78 Mo. App. 8; State ex rel. v. Ennis, 79 Mo. App. 12. (4) The statute gives a right of action only to those who are legally dependent upon deceased for support. In other words those persons whom the law makes it decedent's duty to support, and does give the right of action where there is only a moral obligation, or a good will or friendship support. Good

v. Towns (56 Vt. 410), 48 Amer. Rep. 799. (5) The plaintiff was not entitled to recover under the evidence (conceding that she comes within the terms of the general clause). The evidence shows that she was not dependent on deceased for support. She lived in her own house, used her own furniture, did the cooking and part of the washing for her two sons who lived with her, owned two other houses from which she received $8 to $10 per month rent. There is no evidence that deceased ever furnished her a dollar nor any evidence as to the amount of his earnings. The evidence shows that he worked irregularly and for six months was away and in no manner helping, that plaintiff and one adult single son still live together. In fact the evidence tends more to the idea that plaintiff supported deceased than that deceased supported plaintiff. The statute gives the right of action to one dependent for support on the deceased. Sec. 8820, R. S. 1899. Under the statute there must be an actual dependency on deceased for support. Webster's Dictionary, defining "Dependent." 5 Amer. and Eng. Ency. of Law (1 Ed.), 596; 8 Amer. and Eng. Ency. of Law, 903 and 904; Hodnett v. Railroad, 156 Mass. 86; Houlihan v. Railroad, 164 Mass. 555; Duval v. Hunt, (34 Fla. 85), 15 So. 76; Tel. Co. v. McGill, 57 Fed. 699; 5 Am. and Eng. Ency. of Law, 596; 8 Am. and Eng. Ency. of Law (2 Ed.), 903; 156 Mass., 164 Mass., 34 Fla. and 57 Fed., cited above. (6) The word "required" in section 8822 must be read and construed as "requested" or "demanded." Adams v. Coal Co., 85 Mo. App. 494; Bonner v. Lead Co., 69 Mo. App. 601; Leslie v. Coal Co., 110 Mo. 31; Debath v. Coal Co., 141 Mo. 497; 21 Am. and Eng. Ency. of Law (1 Ed.), 22; Black on Interpretation of Statutes, ch. 2, art. 16, page 25; Black on Interpretation of Statutes, ch. 5, art. 57, page 128; R. S. 1899, sec. 4160; State v. Jones, 120 Mo. 305; Warren v. Paving Co., 115 Mo. 572; State ex rel. v. Marion Co. Court, 128 Mo. 427. (7) The measure of damages is the

pecuniary loss sustained by plaintiff, and before plaintiff can recover she must furnish evidence upon which to base the verdict. In the case before the court, there is no evidence upon which to base the judgment for damages in this cause. Knight v. Lead & Zinc Co., 75 Mo. App. 541, and cases cited; Smith v. Railroad, 28 L. R. A. 573; Van Brunt v. Railroad, 78 Mich. 530; Clinton v. Laning, 61 Mich. 359; Coal & Min. Co. v. Limb, 47 Kan. 469.

*Gardner & Cameron* and *Blair & Decker* for respondent.

(1)   Section 8820 and 8822, Revised Statutes 1899, do apply to lead and zinc mines. They apply to all mines alike. Acts of 1881-85 and 1887, on Mines and Mining; Hamman v. Coal & Coke Co., 156 Mo. 232; Boemer v. Lead Company, 69 Mo. App. 601. (2) Plaintiff is included in the persons authorized by section 8820, to maintain an action for violation of the mining law. Where the intention of the Legislature is plain as it is in this case, no rule of interpretation like the rule of *ejusdem generis,* is necessary. Rules for the construction of statutes are only intended to aid in ascertaining the legislative intent and not for the purpose of controlling it or confining the operation of the statute within narrower limits than was intended by the lawmakers. State ex rel. v. Corkins, 123 Mo. 67; St. Joseph v. Elliott, 47 Mo. App. 421; State v. Williams, 35 Mo. App. 548. (3) The word "required" as used in section 8822 means "needed" or "necessary." It does not mean "requested" or "demanded." Boemer v. Lead Co., 69 Mo. App. 601; Leslie v. Coal Co., 110 Mo. 40; Century Dictionary and Cyclopedia. (4) Plaintiff did not need to have been legally or entirely dependent upon her deceased son, prior to his death, in order to recover in this case. Daley v. Iron Co., 29 N. E. 507; McCarthy v. Order of

Protection, 26 N. E. 866; Ballau v. Gile, 50 Wis. 619; Haulihan v. Railway, 42 N. E. 108; Railroad v. Adams, 55 Pa. St. 499; Railway v. Sweet, 92 Am. Dec. 206; Railway v. Long, 26 S. W. 114; Railway v. Southwick, 30 S. W. 594; Legion of Honor v. Perry, 5 N. E. 638; Daniels v. Railway, 12 S. E. 365; Clay v. Railway, 10 S. E. 967; Railway v. Gravett, 26 L. R. A. 553.

SMITH, P. J.—The defendant is an incorporated mining company engaged in operating a lead and zinc mine in this State. The plaintiff is the mother of M. R. Bowerman who was an employee of the defendant and who, while engaged in working for defendant in its mine, received certain injuries from which he died.

This is an action based on sections 8820 and 8822, Revised Statutes. There was a trial which resulted in judgment for plaintiff and defendant appealed.

I. The defendant objects that this action can not be maintained because plaintiff is not one of the class of persons specially named in said section 8820, article 2, chapter 133, Revised Statutes, which provides: ''For every injury to persons . . . occasioned by a violation of this article or failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life by reason of such violation or failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any person or persons who were before such loss of life dependent for support on the person or persons so killed for a like recovery of damages sustained.'' The plaintiff is neither the widow of the person so killed, his lineal heir or adopted child, and therefore, unless the following concluding words of the section, to-wit: ''or to any person or persons who were before such loss of life dependent for support on the person so killed'' gives her a right of action, she has none.

The defendant invokes the application to such concluding words of the rule of interpretation which requires that where general words follow particular and specified words, the former must be confined to things of the same kind as those specially used. Rules for the interpretation of statutes are most manifestly intended to aid in ascertaining the legislative intent rather than to control such intent or to confine the operation of a statute within narrower limits than was intended by the Legislature. Sutherland on Stat. Const., sec. 279. And if the intention is clearly expressed and the language used is without ambiguity, all technical rules of interpretation should be rejected. State v. Corkins, 123 Mo. 1. c. 66-67.

Section 8820 gives a right of action to any person standing in any one of the following relations to the "person so killed," i. e., that of widow, lineal heirs, adopted children, or dependent upon him for support. Persons who were dependent upon his bounty before his death are as much specified and particularized as any one of the other persons or classes of persons to whom the right of action is given by the section. The section is not a statute in which general words follow particular words. Each person or class of persons for whose benefit the section was enacted are specified and particularized—the one as fully as the other. There is no ambiguity in the language used. The intention, it seems to us, is so clearly expressed that there is neither necessity nor occasion for the application of the rule of *ejusdem generis*.

But defendant further contends that even if the rule just referred to has no application, that still the plaintiff is not entitled to recover because the statute under consideration gives a right of action to only those who are *legally dependent* for support upon the person so killed; and as upholding this contention cites us to Good v. Towne, 56 Vt. 410. A statute of Vermont provided that in case of the death of a person from the use

of liquors unlawfully furnished him, a person who is in any manner dependent on the deceased for the means of support may recover from the person unlawfully furnishing such liquor, damages, etc.   The plaintiff in the case just cited was the bastard child of a father who had died from the use of liquors unlawfully furnished him, and it was held that the statute referred to meant *legal dependency*—a dependency that the party depended on is legally bound to respond to; and that since a father of an illegitimate child was not bound to support it, it was not dependent on him.   That is, it had no claim that the law recognizes for support, and that the statute should be read "*in any manner legally dependent.*"   In support of this ruling Dickinson v. Railroad, 2 H. & C. 735, is referred to, which decides no more than that under the Civil Damage Act of 9 and 10 Vict., c. 93, the words "child of the person killed" as used in that act meant *legitimate child only*. While the ruling in the case referred to supports the defendant's contention, the contrary has been ruled by other courts equal in dignity and respectability.

Under statutes relating to beneficiary associations the question of *dependence* has been held to be a question of fact and not of law.   Am. Leg. of Honor v. Perry, 140 Mass. 580; McCarthy v. New England Order, 153 Mass. 314; Ballau v. Gile, 50 Wis. 619.   By the Employers' Liability Act of Massachusetts, a right of action is given against an employer for the instantaneous death of an employee, who leaves no widow, to the next of kin . . . *dependent* upon the wages of such employee for support.   In an action founded on this statute, an invalid sister, unable to work regularly or to earn enough to pay her doctors' bills, and who had received from her brother during his lifetime an average of thirty to thirty-five dollars a month for three years, and who, in fact, received her support from him and was dependent upon him for her support, was held to be entitled to recover from the defendant, her brother

having met an instantaneous death while in its employ. One of the contentions in the case was that the plaintiff was not *dependent* upon the wages of the deceased in the sense contemplated by the statute; that the deceased was not legally bound to support her, and that merely gratuitous payments by him established no dependence; that moral or equitable considerations were insufficient, and that legal dependence was the test. But the court in answering defendant's contention said, "this is too strict a construction of the statute. *The fact of dependence is sufficient.*" Daley v. N. J. Steel & Iron Co., 155 Mass. 1. And other cases are to be found in the reports to the same effect. Hodnett v. Railroad, 156 Mass. 86; Houlihan v. Railroad, 164 Mass. 555; Daniels v. Railroad, 86 Ga. 236; Clay v. Railroad, 84 Ga. 345; Railway v. Sweet, 45 Ill. 197.

The holding in these cases under statutes similar to that here, that if a plaintiff is *dependent in fact* that that is sufficient to bring his case within the statute, commends itself to our approving judgment, and it accordingly follows that the plaintiff in the present action falls within said section 8820, if it appears that she was dependent in fact on the deceased for support, and this without reference to moral or equitable considerations. And looking at the evidence, we find it is quite sufficiently shown that the plaintiff was dependent for support upon her deceased son, and that in a large measure she was supported by his bounty. The evidence, we think, was ample to carry the case to the jury on the issue of whether or not the plaintiff was in fact dependent on the deceased for her support. We can not say, as a matter of law, that there was a total lack of evidence supporting the affirmative of this issue.

II. Section 8822, already referred to, provides that the owner, agent or operator of any mine shall keep a sufficient supply of timber when required to be used as props so that workmen may at all times be able to properly secure the said workings from caving in,

and it shall be the duty of the owner or operator to send down all such props when required. The plaintiff in her petition claims that the injury received by her son, and from which he died, was occasioned by a failure of the defendant to comply with the requirements of that section.

The defendant contends that under said section the plaintiff is required to show as a condition precedent to liability that the props therein specified were requested, and as no such request was shown that there is no liability. The term "required," as has been seen, is used in both clauses of the section. It would, it seems to us, be absurd to hold that this term as used in the first clause is equivalent in meaning to the terms "requested" or "demanded," or that it should be so read. Certainly, the Legislature did not intend by the enactment of this clause to declare that the mineowner, agent or operator should keep a sufficient supply of timber *when requested,* to be used by the miners for the purpose therein indicated. While the section in its structure is somewhat clumsy and inartistic, yet we think what the Legislature intended by the enactment was to declare, by the language of the first clause, it to be the duty of the mineowner, agent or operator to keep on hand a sufficient supply of timber for props to be used by the miners *when needed* to secure their workings. We must think that the term "required" was used as the equivalent or synonym of "needed," and should be so read and understood.

According to the lexicographers referred to in the briefs of counsel, the term "required" has several well-recognized meanings, or, rather, shades of meaning, and where this term is found in a statute, as here, and the precise meaning which should be given to it is involved in doubt or uncertainty, then in interpreting the statute we should, we think, select and give it that shade of meaning which will make the statute serve what appears to have been the purpose of the Legislature in its

enactment. Having reached the conclusion that the word "required" as used in the first clause of the section should be read and understood to mean "needed," the question thus remaining is, whether or not a like or different meaning should be given to it where it occurs in the second clause?

The duty enjoined by the section is that mining companies shall keep on hand a sufficient supply of timbers for props to be used when needed by the miners engaged in working their mines to keep their workings from caving in, and when so needed to send them down. When a mine is being worked it is done under the supervision and direction of a "general boss" or "ground foreman" who represents the company and is in a certain sense its vice-principal. If props are needed in the mine he is presumed to know it, and his knowledge is that of the company; and when such props are so needed it is the duty of the company to send them down to the miners. It is not the duty of the latter to "request" or "demand" them, but it is that of the company to furnish them because they are needed, and of this fact it is conclusively presumed to be apprised. It follows, therefore, that the term "required" should be considered and read as having the same meaning in the latter clause as it does in the former. It also further follows that the trial court did not err in modifying the defendant's fourth instruction by striking therefrom the word "requested," and inserting in lieu thereof that of "required."

III. The defendant contends further that under the evidence the plaintiff was not possibly entitled to recover more than nominal damages; but this contention we are unable to concede. While the evidence is not as full and explicit in some respects as it might have been, still it does show directly and inferentially that the deceased and the plaintiff most generally lived together and that she was in indigent circumstances and derived the most of her support from him, and that she

was dependent upon him for her support. It also shows his and her age and about the amount annually required and contributed for her support. She testified that her deceased son always furnished her a good living; that she "lived off of his means." When asked whether or not one hundred and twenty dollars per year would pay for her food and clothing, she replied: "I could use more than that. I always had a good living I can say that for him"—meaning her deceased son. Taking this testimony together with that as to the age and habits of industry of her son, and we can not say the verdict was unwarranted nor that it was wholly unsupported by the evidence.

It is proper to state that in reaching the conclusion just expressed we have not been unmindful of the rulings made in some of the adjudged cases cited in the brief of the defendant's industrious counsel, which are to the effect that it devolves on a plaintiff in actions of this kind to "show with a reasonable degree of accuracy" the "amount and character of the benefits received." Conceding the ruling in these cases to be correct, and yet we think that under the evidence the verdict should stand.

Perceiving no reason justifying a disturbance of the judgment, it will be affirmed. All concur.