CHARLES E. MOORE, APPELLEE, v. VILLAGE OF NAPONEE, APPELLANT.

FILED FEBRUARY 16, 1918.   No. 20379.

1.  **Master and Servant**: INJURY TO SERVANT: LIABILITY OF MASTER. Where a laborer, without experience or previous knowledge of the work, is employed in digging a trench, no instructions or warning as to danger being given him, the failure of the master to shore up or brace the walls of the trench to prevent caving, it being customary and reasonably necessary so to do, and no materials or timbers being furnished to the workmen for that purpose, the sudden caving in of the walls of the excavation, by which the workman is injured, will render the master liable in damages.

2.  ———: PLACE FOR WORK: LIABILITY. It is the duty of the master to exercise reasonable care to provide his servant with a reasonably safe place in which to work, and a failure to perform such duty, if it results in injury, will render the master liable in damages.

3.  ———: ASSUMPTION OF RISK. One cannot be held to assume a risk of which he has no knowledge or warning unless such risk is so open and obvious to an ordinary person as to challenge his attention thereto.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Flansburg & Flansburg,* for appellant.

*W. H. Miller* and *George A. Adams, contra.*

HAMER, J.

This is the second appeal in this case. The action was for damages caused by the alleged negligence of the defendant Village. The first trial in the district court resulted in a judgment for the plaintiff, and the defendant appealed. The cause was submitted to the commission, and a reversal was recommended. On the second trial the plaintiff had the verdict and judgment for $750. The defendant has appealed.

The facts as shown by the evidence are in substance as follows: On the second day of October, 1911, the defendant, an incorporated village of Franklin county, was engaged in constructing a sidewalk or bridge across a stream, called Turkey creek and within the corporate limits of said village. By an ordinance of the village trustees, the president of the village board, one G. C. Strimple, and one George S. Gillard, a member of the board, were designated to take charge of the work. They employed the plaintiff, Charles E. Moore, and one C. J. Hartt as day laborers, and set them to work. It seems that it was necessary to excavate a trench on the west bank of the creek in order to construct a concrete abutment for the bridge or sidewalk over the water-course. The plaintiff, together with Hartt, were set to work digging the trench by the president, Strimple, and the trustee Gillard. They proceeded to excavate a trench about 2 feet wide, 14 feet long, and from 7 to 8 feet deep. When they had about completed the excavation, the west bank of the trench caved in onto the plaintiff and injured him rather severely.

The negligence of which the plaintiff complains was defendant's failure to shore up or brace the walls of the trench, or to furnish the plaintiff and Hartt with timbers and materials with which they could have braced the walls of the trench, and thus have provided themselves with a safe place to work.

The record discloses that, after plaintiff had introduced his evidence, the defendant demurred to its sufficiency, and requested the court to direct the verdict in its favor. The demurrer was overruled, and the requested instruction was refused. For this ruling the defendant assigns error, and contends that the evidence was insufficient to show any negligence on its part.

It is a somewhat significant fact that, when the case was before us on the first appeal, the judgment was reversed, because of the recommendation of the commission, for the reason that the plaintiff had failed to produce any evidence of a custom or a necessity to brace or shore up the walls of the trench or excavation. The record of the second trial supplies this evidence. And Mr. Clarence Davis testified that he had been engaged in building bridges in Franklin county for more than two years, and had constructed a large number of them; that he knew the custom and the necessity of the work; that in excavating trenches in which to lay concrete abutments it was his custom, and it was necessary, to brace or shore up the side walls to prevent them from caving in. He also testified that he had constructed a foot-bridge across a creek in Naponee, near where the one in question was constructed. He thus showed his competency to testify as to such a custom and necessity.

The evidence on both sides of this case shows that no precaution whatever was taken by those in charge of the work, either by bracing the walls of the trench or furnishing any material with which either the plaintiff or Hartt could have braced them or prevented them from caving. It clearly appears that defendant's agents gave the workmen no warning, and that they had no knowledge of the danger, or the necessity of protecting the walls from caving. In such cases the rule is that a duty rests upon the master of using reasonable care to provide a reasonably safe place for

the servants to work, and a failure to perform that duty will render him liable. It follows that the defendant was guilty of actionable negligence in this case, and the ruling of the trial court is sustained.

It is the duty of the owner to know when props are needed, and then to supply them, without waiting for request by the workmen. *Bowerman v. Lackawanna Mining Co.*, 98 Mo. App. 308. "A master is bound to furnish the servant a reasonably safe place in which to work, considering the nature of the work." *McMahon v. Ida Mining Co.*, 95 Wis. 308.

In *English v. Chicago, M. & St. P. R. Co.*, 24 Fed. 906, it was said by Judge Brewer in the body of the opinion: "That where a master commands a servant to go outside of his regular employment to do a work which is attended with special danger, and the servant, in response to the specific commands of his master, goes and does the work in the way and at the time directed, the fact that the servant knew it was dangerous does not exonerate the master from responsibility, or make the servant guilty of contributory negligence, unless the character of the danger be so patent and so extreme that no one but a foolhardy, reckless man would attempt it. For instance, where an engineer was told to take his engine in advance of a regular train over a track which he knew to be dangerous, and to keep out of the way of a coming train, and the engineer did so, and was killed, the fact that he knew the track was dangerous was held not to be such a fact as would render him guilty of contributory negligence."

In 1 Bailey, Personal Injuries (2d ed.) sec. 150, it is said: "Thus, where an employee had been ordered to clean out certain underground water-pipes, and a trench had been opened for the purpose of furnishing him a proper place and opportunity to do the work by the defendant's section-men and other laborers, and, while he was so engaged in disconnecting such pipes, the earth caved in upon him, causing his death, it was

held the defendant was liable upon the ground of failure of duty to furnish him a reasonably safe place to work.'' Many authorities are cited in support of this proposition. In the same section it is further said: ''And where it was alleged that the defendants, who were the selectmen of a town, were negligent in failing to provide suitable means of support for the sides of a trench, in which they had employed the plaintiff to lay pipe for the purpose of building a public sewer, it was held they were bound, when they hired him to work in a particular place, to see that it was reasonably safe, and that materials were furnished to make it so.''

Assumption of risk is urged as another reason for the reversal of the judgment. The testimony clearly shows that the plaintiff had never been engaged in the work of digging ditches or trenches or in excavating for concrete foundations. Therefore he had no knowledge that the work was dangerous. To ordinary observers there would seem to be no danger connected with it. Plaintiff was not aware that he was assuming any risk whatever. The servant cannot be held to assume a risk of which he has no notice. In any event, the question presented in this case was one for the jury, and, they having resolved it in plaintiff's favor, their verdict will not be set aside. There was a conflict of evidence, and it was for the jury to determine what the verdict should be.

In conclusion, the record shows that the case was fairly tried and given to the jury under proper instructions. No reversible error has been pointed out, and the judgment of the district court seems to be right, and it is

AFFIRMED.

ROSE, J., dissents.

SEDGWICK, J., not sitting.