C. W. McCULLOUGH, Administrator of the Estate of CHARLES FURNIS McCULLOUGH, deceased, Respondent v. W. H. POWELL LUMBER COMPANY a Corporation, Appellant.

McCullough v. Powell Lbr. Co.

Springfield Court of Appeals, December 6, 1919.

1. **NEGLIGENCE:** Proof of Specific Averments Essential. Averments of specific negligent acts supersede a general averment of negligence, and plaintiff must recover, if at all, on the specific acts pleaded.

2. **MASTER AND SERVANT:** Evidence Insufficient to Prove Negligence Alleged. Where the petition in an action for the death of a fireman, scalded by steam, alleged that the steam line from the boiler to the engine was defective, and so loosely connected as to come loose, proof that a pipe underneath the boiler to the pump and mud pipe became disconnected, and allowed the escape of steam, will not support recovery.

3. **DEATH:** Nature of Recovery. The amount recoverable under Revised Statutes 1909, sections 5426, 5427, for wrongful death, is compensatory.

4. ———: Capacity in Which Administrator of Decedent Sues. An administrator, suing under Revised Statutes 1909, sections 5426, 5427, for the wrongful death of his intestate, sues merely as trustee for those who would be entitled to the proceeds of the judgment, and not on behalf of the estate.

5. ———: Dependency Basis for Recovery; ''Necessary Injury.'' In an action for wrongful death under Revised Statutes 1909, sections 5426, 5427, the question whether there was such dependence by those to whom the recovery would accrue under the laws of descent as to justify recovery, is not to be determined by strict legal dependency making deceased legally liable to furnish support, for the phrase "necessary injury" is broad enough to include any damages.

6. ———: Pecuniary Loss From Death of Another. The fact of pecuniary benefit does not require definite and exact·proof in an action for death under Revised Statutes 1909, sections 5426, 5427; but whenever there is a reasonable probability of pecuniary benefits to one from the continuing life of another, however arising, the untimely extinguishment of that life raises a presumption of pecuniary injury.

7. **PARENT AND CHILD:** Support of Parent. An unmarried adult is under no legal obligation to support his father, mother, brothers, and sisters, though such adult was still living in the family.

8. **DEATH:** Sufficiency of Evidence to Go to Jury. In an action under Revised Statutes 1909, sections 5426, 5427, for wrongful death of an unmarried adult, brought by an administrator for the bene-

fit of the surviving father, mother, brothers, and sisters, evidence of the pecuniary loss *held* sufficient to carry the case to the jury.

9. ———: **Evidence of Loss.** In an action by an administrator under Revised Statutes 1909, sections 5426, 5427, for the benefit of the surviving father, mother, brothers, and sisters of deceased, an unmarried adult, evidence of deceased's indebtedness is inadmissible to show necessary injury, although evidence that a brother was surety on 'deceased's obligations is admissible to show the brother's loss.

10. ———: **Medical and Funeral Expenses not Recoverable.** In an action by an administrator, under Revised Statutes 1909, sections 5426, 5427, for wrongful death of his intestate, brought for the benefit of the father, mother, brothers, and sisters of deceased, evidence of the expenses for burial incurred by the beneficiary, as well as expenses incurred in attempting to relieve deceased of his injury, is inadmissible to show damages, for the beneficiaries were under no legal liability to incur such expenses.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*Frank H. Farris* and *G. C. Dalton* for appellants.

(1) "A master is not liable for injuries from hidden defects and dangerous. appliances which could not have been discovered and avoided by reasonably careful inspection." Taylor v. Centralia Coal Co., 155 Ill. App. 324; Mercer v. Atlantic Coast Line R. Co., 70 S. E., 742, 154 N. C., 399; Dunlap v. Indiana Union Traction Co., 90 N. E. 904; Fellows v. Stevens, 132 N. W. 1048. (2) "A master is not liable for. an injury to a servant caused by the breaking of the handle of an ax, where the defect in the handle could not be discovered by ordinary inspection." Moran v. Brown, 27 Mo. App. 487; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202; Bohn v. Chicago, R. I. & P. Ry. Co., 106 Mo. 499, 17 S. W. 580; Howard v. Missouri Pac. Ry. Co., 73 S. W. 467, 173 Mo. 524; Bennett v. Himmelberger-Harrison Lumber Co., 94 S. W. 808, 116 Mo. App. 699. (3) If deceased be over twenty-one years of age at time of his death; does not leave a wife, husband, child or children;

when the injury from which he died was caused by negligence of some person and the deceased before his death had filed suit for purpose of recovering for the injury; but, before judgment in such suit is rendered he dies from said injuries, then such action would survive in favor of the administrator. This is by reason of a specal statute enacted long after the subdvisions of section 5425 which said subdivisions are numbered 5426 Id. and 5427 Id., was enacted. R. S. 1909, section 5438. (4) The Legislature must have recognized the fact that under section 5425, Revised Statutes 1909, and its subdivisions 5426 Id. and 5427 Id., no cause of action would survive in favor of an unmarried person over the age of 21 years; and in order to make the action survive and save costs for the estate of deceased; if such deceased person dying from injuries caused by negligence of some person had begun suit before his death then this special section makes such action survive; but, no other. R. S. 1909, section 5438, Laws of 1917, page 252.

*Wm. P. Elmer* and *John M. Stephens* for respondents.

(1) The administrator as such was entitled to file and maintain this suit. A cause of action exists in his favor under the statute. The heirs are the beneficiaries entitled to distribution as in all cases of personal property. Sec. 5426, R. S. 1909; Crohn v. Telephone Co., 131 Mo. App. 313; Downs v. United Rys., 184 S. W. 998; Guthrie Adm. v. Ry., 204 S. W. 185; Johnson v. Dixie Mining Co., 156 S. W. 133. (2) Prior to 1905 an administrator had no right of action under our Damage Act but in 1905 the right to sue was conferred upon administrators by amendment of section 2864 now section 5425, R. S. 1909. This right was extended to cases arising under section 2865 now section 5426 and section 2866 now section 5427 in 1907. The case cited below fully explains these various amendments and the law as it existed before the amendments. Crohn v. Telephone Co.,

131 Mo. App. 313; Johnson v. Dixie Mining Co., 156 S. W. 133. (3) The damages recovered are distributable to the persons and in the order named in following section. Secs. 5425, 5427, R. S. 1909. (4) The statute is compensatory and some damage must be shown to have resulted to the plaintiff or those he represents, but this is done by proving contributions to support or unpaid debts against estate of deceased, and especially so as to those debts on which the other distributees were liable. Sec. 2866, R. S. 1909, Downs v. United Rys. Co., 184 S. W. 998.

BRADLEY, J.—Plaintiff as the administrator of Charles Furnis McCullough, deceased, sued to recover damages under sections 5426 and 5427, Revised Statutes 1909, for the death of the deceased alleged to have been caused by the negligence of the defendant. It is alleged in the petition that the deceased was single and unmarried, and that he left surviving neither wife nor children, and was over the age of twenty-one years at the time of his death. That he left as his sole and only heirs and distributees, his father, mother, four brothers and three sisters, naming them. It is further alleged that the deceased at and for a long time prior to his death contributed his earnings to the persons named for their necessary support and maintenance; that on —— day of January, 1918, and for sometime prior thereto, the deceased was employed by the defendant company as fireman of its boiler in the operation of a planning mill in Salem, Missouri, and that he was under the direction of its foreman.

The grounds of negligence charged in the petition are; (1) That it was the duty of the defendant to furnish the steam boiler and engine which deceased was firing in a reasonably safe condition, and to furnish the deceased reasonably safe tools and appliances with which to carry out and discharge his duties; and it is charged that the defendant wholly disregarding and neglecting its duties in this behalf did not furnish reasonably safe

tools and appliances and did not furnish a boiler in a reasonably safe condition, but that on the contrary the said boiler was unsafe, and in a condition dangerous to human life for those engaged in firing and operating it; and that defendant knew of this condition or could have known such condition by the use of the required care. (2) That on the ——day of January, 1918, the defendant's foreman directed deceased to fill said boiler with water and place a fire thereunder and to run and operate the same, and that the deceased obeyed said instructions as directed and was running, operating and conducting said boiler when said boiler, because of its dangerous and defective condition, exploded, and inflicted upon deceased, internally and externally, serious burns from which he died on the same day. (3) That the steam line from said boiler to the engine was old and defective and was carelessly, negligently and defectively connected to the boiler, and was .so loosely connected that the pressure of the steam from the boiler blew the same off allowing and permitting the steam and hot water to escape at and upon deceased thus and thereby causing his injury and death.

It is further charged in the petition that the deceased was inexperienced in the work in which he was engaged, and that the defective condition of the boiler was unknown to him, and could not have been known to him by the exercise of reasonable and ordinary care; that the defect was concealed, and that deceased relied upon defendant exercising ordinary care in furnishing reasonably safe machinery and appliances with which to work, and a reasonably safe place in which to work.

To this petition defendant interposed a demurrer based upon eight specified grounds, but the demurrer is bottomed principally upon the proposition that plaintiff has no legal capacity to maintain this cause. The demurrer was overruled, and defendant answered by a general denial; and that plaintiff had no legal capacity to sue. Also defendant pleaded assumption of risk, and contributory negligence. The cause was tried before the

court and a jury, resulting in a verdict in favor of plaintiff in the sum of $5000. Defendant, being unsuccessful in its motion for a new trial, prosecutes its appeal to this court.

The record discloses that deceased was a young man twenty-four years of age, but was still living at home with his mother and father, four brothers and three sisters, some of which brothers and sisters were yet minors. The family it seemed lived in common, and whatever deceased made went to the maintenance of the whole family. The father and the boys farmed, made ties, and did whatever was at hand in the way of common labor, and the evidence is that the deceased was making about two dollars per day.

The boiler room in which was the boiler deceased was firing was 16x32 feet. The boiler was encased in brick walls. From underneath and to the rear of the boiler there extended down eighteen inches a three inch pipe. To this pipe was attached an elbow connected with a pipe leading to the pump for pumping water into the boiler; and also connected with this eighteen inch pipe was what is called the mud pipe which extended out beyond the end of the boiler, and the evidence was that when the pump was in operation the platform upon which it rested shook considerably so that the pipe connecting the pump with the elbow mentioned was also shaken considerably when the pump was in operation. The evidence shows that the boiler and connections had been installed about a year prior to the accident resulting in the death of the deceased, but that it had been operated only about six months of this time.

The evidence shows that the accident occurred about six o'clock p. m. on January 14, 1918, about quitting time as the witnesses say. The injury to deceased was caused, as shown by the evidence, because the pipe leading from the elbow mentioned to the pump became disconnected at the elbow, and this permitted the steam and water in the boiler to escape into the boiler room.

There is no direct evidence as to where in the boiler room the deceased was at the time the pipe became disconnected, but the evidence shows that the disconnection resulted in a sudden explosion which partly lifted the roof of the boiler room and blew some of the brick from the top of, and a hole in the boiler room wall, and there is evidence that the brick wall around the boiler was partly demolished. The deceased was badly and fatally scalded and burned about his face, in his mouth, in his throat, and over his entire body, and was unable to make any statement of consequence. Upon hearing the explosion the men about the mill, including one of the brothers of deceased, went to the boiler room, and found deceased in the shavings room, a small room extending across the entire width of the boiler room, and in front of the boiler and into which the shavings from the mill were blown and used for fuel. There was no mud and water in the shavings room, and it is apparent that deceased went from wherever he was at the time of the explosion to the shavings room in his effort to escape.

The evidence tends to show that the pipe that extended from the elbow to the pump and which became disconnected was screwed into the elbow only about two or two and one-half rounds. The threads on this pipe where it entered the elbow were stripped, and remained in the elbow, and were found there when an examination was made after the injury. There is some evidence that this pipe was screwed in to the elbow as far as the threads extended on the pipe, but if this be true, then as appears from the record, there was only two or three rounds of threads cut on the pipe when the machinery was installed. This particular elbow was new at the time of the installation of this machinery, the threads extended into it some three-fourths of an inch, which would have permitted the pipe to have been inserted to that depth had sufficient threads been cut on the pipe. The record also shows that the threads on this particular pipe were cut at the time of the installation of the machinery about a year previous to the accident. Also it is

shown by witnesses of experience that this pipe should have been inserted in the elbow at least three-fourths of an inch in order to have been reasonably safe, considering the size of the boiler and the amount of steam usually carried in operatingg the planning mill.

Defendant makes several assignments of error, in view of which three propositions are presented: (1) Can the plaintiff rely upon his allegation of general negligence when he has followed such general allegation by allegations of specific acts of negligence, and does the evidence support the specific act of negligence alleged? (2) Has plaintiff any legal capacity to maintain this cause of action; and if so, may the recovery be for more than nominal damages? (3) Was error committed in the admission of evidence?

(1) It seems to be the established and accepted law of this State that where specific acts of negligence are charged in the petition which contains also a general allegation of negligence that the specific negligent acts alleged are treated as superseding the general averment; and the plaintiff must recover, if at all, on the specific acts of negligence alleged. [Lauff v. Carpet Company, 186 Mo. App. l. c. 135, 181 S. W. 986; McManamee v. Missouri Pacific Railway Company, 135 Mo. 440, 137 S. W. 119; Barnett v. Star Paper Milling Company, 149 Mo. App. 498, 130 S. W. 1121; Gibler v. Railroad Company, 318 Mo. App. 475, 128 S. W. 791; Waldhier v. Railroad Company, 71 Mo. 514; Clark v. General Motor Car Company, 177 Mo. App. 623, 160 S. W. 576; O'Brien v. Western Steel Co. 100 Mo. 182, 13 S. W. 402; McCarty v. Hotel Co. 144 Mo. 394, 46 S. W. 172; Chitty v. Railroad 148 Mo. 64, 49 S. W. 868.] Plaintiff cannot, therefore, rely upon his general allegation of negligence. We do not think it necessary to cite any authorities to support the proposition that plaintiff cannot rely upon the charge in the petition that the pipe leading from the boiler to the engine became disconnected, when the evidence shows conclusively that that was not the case. Plaintiff clearly charges one specific act of negligence

and has clearly proved another, and made no attempt to amend his petition so' as to make it conform to the evidence. Plaintiff in his brief on this point says that calling a pipe a steam line instead of a water line is a difference in name only, and only shows the pleader's unfamiliarity with machinery. But such is not the case here. It has always been the law that if the plaintiff recover at all it must be on some act of negligence alleged in the petition, and we cannot see how an allegation that the steam pipe leading from the boiler to the engine' became disconnected can be supported by proof that a pipe underneath the boiler leading to the pump and the mud pipe became disconnected. The negligence proved had there been a supporting allegation in the petition was amply sufficient to take the case to the jury. But as we have observed there is no allegation in the petition to support the negligence proved, when the general allegation is eliminated which must be done when the pleader follows the general allegation with specific allegations.

(2) In the consideration of the second proposition as to the plaintiff's right to maintain this cause and the matter of damages, it is necessary to consider sections 5426 and 5427 in connection with section 5425. Section 5426 has remained unchanged since its enactment in 1855, and section 5427 has been amended only to the extent of changing the amount which might be recovered, and the changes that have been made by *reference* in the class of persons who may sue as designated in section 5425. The amount recoverable under sections 5426 and 5427 has always been held to be compensatory damages. [Johnson v. Dixie Mining & Development Company, 171 Mo. App. 134, 156 S. W. 33; also same case 187 S. W. (Mo.) 1; Troll v. Laclede Gas Light Company, 182 Mo. App. 600, 169 S. W. 337; Kirk v. Wabash Railway Company, 265 Mo. 341, 177 S. W. 592.]

In Johnson v. Dixie Mining & Development Company, supra, the facts were similar to those in the case at bar, and the cause was brought under the same sec-

tions of the statute. A demurrer to the petition was interposed and sustained on the ground that the plaintiff had failed to allege the names of the beneficiaries for whom he sued other than the estate. In that case the deceased at the time of his death was over the age of twenty-one years, and left no wife or minor child or minor children, natural born or adopted, and in that particular is on all-fours with the case at bar. The contention of the plaintiff there was that the suit could be maintained by the administrator without naming any of the beneficiaries to whom the proceeds of a judgment would he distributable under the statute. It will be noted that section 5427 provides that damages accruing under section 5426 are to be sued for and recovered by the same parties, and in the same manner as provided in section 5425, and that in every such action the jury may give such damages not exceeding the statutory amount as they may deem fair and just with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue. The gist of the holding in the Johnson case is that an administrator suing under sections 5426 and 5427 is merely suing as trustee for those who would be entitled to the proceeds of the judgment, and not on behalf of the estate as that term is generally used and understood. That case was certified by this court to the Supreme Court and was there affirmed. [Johnson v. Dixie Mining and Development Company, 187 S. W. (Mo.) 1.]

That the damages recoverable under sections 5426 and 5427 are compensatory is not controverted, and it necessarily follows in order to recover under said sections that there must be some one in being who is entitled to such compensatory damages. That is, there must be someone in the line designated in the statute of descent and distribution who is pecuniarily injured by the death of the deceased. If there is no such person or persons then it is apparent that no cause of action can be maintained, because it would be idle to say that a cause of action could be maintained, and a judgment

recovered when there is no one to receive the judgment. Therefore the question of plaintiff's legal right to maintain this cause depends upon the fact of there being some one to whom the proceeds of a judgment could go in the event of recovery.

Plaintiff alleges that the deceased for a long time prior to his death contributed his earning to his mother, father, brothers, and sisters, and that such contribution was necessary for their support and maintenance. The test in view of the facts of the instant case is: Were the persons named in the petition as the beneficiaries, so far as concerns the question of damages, pecuniarily injured by the death of the deceased, or would they have pecuniarily benefited by the continuing life of deceased? If these beneficiaries were pecuniarily injured by the death of the deceased, then plaintiff may maintain this cause of action, otherwise he cannot. Recovery will not be sustained for the death of an adult where there is no evidence that the beneficiary was receiving any pecuniary benefits from the deceased at the time of his death. Dependency as used in cases falling under our damage act means dependency in fact, and not necessarily a strict legal dependency making the deceased legally liable to furnish support. [6 Thompson on Negligence, sec. 7049; Bowerman v. Lackawanna Mining Company, 98 Mo. App. 308, 71 S. W. 1062.] The fact of pecuniary benefit does not require definite and exact proof, but wherever there exists a reasonable probability of pecuniary benefit to one from the continuing life of another, however arising, the untimely extinction of that life raises a presumption of pecuniary injury. [6 Thompson on Negligence, sec. 7050; McKay v. New England Dredging Company, 43 Atl. (Mo.) 29; Baltimore Railroad Company v. State, 63 Md. 135.]

It is held in Barth v. Railway Company, 142 Mo. l. c. 559, 44 S. W. 778, that the phrase "necessary injury" in our statute is broad enough to include any damages which may be estimated according to a pecuniary standard whether present, prospective or proximate. We

realize that the facts in the case at bar, relative to damages that plaintiff may recover, render uncertain and somewhat vague the measure by which to determine the amount of such recovery. This is not like a case where a parent is suing for the death of a minor child, or husband for wife, or the wife or the husband, where it is always possible to have some definite standard by which damages may be estimated. The deceased was under no legal obligation to support his father and mother, brothers and sisters, and therefore neither of them had any legal claim upon him for support, and his contribution to their support and maintenance was at the time of his death wholly voluntary. But the fact is, according to the record, that deceased had been contributing to their support and was so doing at the time of his death, and as held in Bowerman v. Lackawanna, supra, it is not necessary that there be a legal dependency making the deceased liable to furnish support for the beneficiaries in order to establish the pecuniary injury. In discussing the question of pecuniary injury, or damages in a case under the damage act, ELLISON, J., for the Kansas City Court of Appeals in Hickman v. Missouri Pacific Railway Company, 22 Mo. App. 1. c. 350, says: "If a child, over the age of twenty-one years at the time he may be killed by negligence, is actually, at that time, engaged in the service of his parents as a member of the family, a different question would be presented. It was said in North Pennsylvania Railway Company v. Kirk, 90 Pa. St. 15, that 'if there be reasonable expectation of pecuniary advantage from a person bearing the family relation, the destruction of such expectation by negligence occasioning the death of the party from whom it arose will sustain the action.' The son in that case was twenty-eight years old and was, at the time of his injury, engaged in the service of his father, without compensation. Such question, however, is not presented in the present case."

We hold, therefore, under the facts here that the question of damages is for the triers of the facts; that

is that there is enough evidence tending to show that the death of deceased was of sufficient pecuniary injury to the beneficiaries named in the petition to justify the submission of the question of damages to the jury. We think the observation made by Judge Ellison in Hickman v. Railway Company, supra, as to the duty of the jury applicable here, and we quote; "While it is difficult to make clear just what the loss amounts to in such cases, yet it must be shown by evidence. Much, of course, from the nature of the action, must be left to the common sense and fairness of the jury, yet the jury should not act in an unrestrained or irresponsible manner. They must draw their inferences from the evidence and law as presented, with fairness and reason."

(3) The evidence discloses that the deceased owed some notes amounting to about a thousand dollars, and that one of the brothers named in the petition was on these notes. One of the notes was secured by a trust deed on the farm where the whole family lived; another note was for a span of horses, and secured by mortgage on the horses. Evidence of these obligations was admitted over the objections of the defendany. Presumably such evidence was admitted for the purpose of showing that this brother was especially pecuniarily injured in that he might have to pay the whole obligation since his brother's death. But the extent of such pecuniary injury would depend on the value of the security, and the contingency of the condition and life of the team, and the rise or fall in the value of the real estate. If the evidence of these obligations was admitted on the theory that the estate was concerned as such, then it was incompetent, because as we have seen already the estate as such is not concerned. We hold that evidence of debts owned by the deceased was not competent. The estate as such is not concerned, and it would be a strained construction to say that "pecuniary injury" as used in the statute covers that class in the line of descent who may be pecuniarily injured by debts of the

deceased. The phrase "necessary injury" in section 5427 has reference to pecuniary loss resulting from the fact that the deceased was at the time of his death contributing something of a pecuniary value to the beneficiary or beneficiaries. If the administrator is suing as a trustee for those in the line of descent who have been pecuniarily injured by the death of the deceased, then the fact that deceased may have owed debts is of no consequence.

Defendant also challenges the competency of evidence as to medical and funeral expenses, and also for expenses incurred at a hotel where deceased was taken in an effort to relieve him, and save him if possible. It has been held a number of times in this State that such expenses are recoverable under the damage act where there was a legal obligation to furnish such aid, and to incur such expenses. [Coleman v. Land & Lumber Company, 105 Mo. App. 254, 79 S. W. 485; Hickman v. Railway, supra.] But we find no authority to support the contention that such expenses are elements of damage in the situation here. There was no legal obligation on the part of any of the beneficiaries named in plaintiff's petition to furnish medical aid, or to incur expenses for the funeral. In Hickman v. Railway Company, supra, it is said that the natural duty of the child to the parent has been from an early period in the history of the world an object of statutory solicitude, but that in the absence of legislation the distinction between the natural and the legal duty remains. Of course the same observation is applicable when speaking of the duty of the parent to the child. We cannot breathe into a statute a spirit not reasonably within its terms. The observation is made in Johnson v. Dixie Mining Company, supra, that: "It would be competent for the Legislature to prescribe as a measure of damages, with reference to a suit by the administrator, the damage to the estate of the deceased, but that would be a new and different measure than that already prescribed by section 5427 prior to permitting an administrator to sue

thereunder.   This seems to have been done in other States.  [Southern Pacific Company v. Wilson, 85 Pac. (Ariz.) 401; In re Meekin, 64 N. Y. 145, 51 L. R. A. 235; McCabe v. Light Company, 61 Atl. (R. I.) 667.]   To do so by construction would be judicial legislation.   The Legislature did not do so and the measure of damages is left as it has always been.   The mere authorization of an administrator to sue under this section does not work a change as to the measure of damages in such suits.''

We hold that evidence of medical and other expenses incurred in treating deceased, and funeral expenses are not proper elements of damage under the facts here.

Defendant makes complaint regarding the instructions given for plaintiff, and since the cause is to be retried we suggest that instructions one and two given for the plaintiff be so connected as to constitute one instruction with the latter part of instruction one as it now stands ommitted, because it would appear from instruction number one independent of any other instruction that plaintiff could recover without any showing of negligence whatever.   If the instructions are not united as one, then instruction number one should be so worded as to require proof of the negligence alleged before authorizing recovery.   For the errors noted the cause is reversed and remanded and plaintiff may amend his petition to conform to the facts.   [Coleman v. Land & Lumber Company, supra. ] *Farrington, J.,* concurs. *Sturgis, P. J.,* dissents.